IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PHYLLIS A. MARTINEZ, | ) | Civil No.: 3:11-cv-00672-JE |
| | ) | |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

JELDERKS, Magistrate Judge:

Plaintiff Martinez brings this action alleging unlawful race and age discrimination against her employer, the Social Security Administration. Defendant moves for summary judgment. For the reasons set forth below, the motion is granted.

## Background

Plaintiff is a forty-nine year old Hispanic female who began her employment with Defendant in its Portland, Oregon Office of Disability Adjudication and Review ("ODAR") in 2004. Plaintiff was hired as a GS-6 Case Technician. Case Technicians assist the Social Security Administration's Administrative Law Judges ("ALJs") by scanning documents,

scheduling hearings and obtaining vocational experts.  Plaintiff continues to be employed by Defendant at ODAR and, in September of 2011, was promoted to the position of Senior Case Technician ("SCT").

I.  2008 Non-selection for Promotion

In November 2008, Plaintiff applied for promotion to the position of SCT.  She was near 45 years old at the time.  The selecting official for the position was Susan Leise, Hearing Office Director for the Portland ODAR office.  Leise had been Plaintiff's second line supervisor since approximately 2007.  After the job announcement closed, Leise was provided with an electronic list of the six best qualified candidates.  All six candidates were Defendant's employees and Plaintiff was one of the six.  From those on the best qualified list, Leise selected Rose Richard, a Caucasian employee under forty years of age, for the SCT Position.

Leise submitted an affidavit as part of the administrative investigation into Plaintiff's complaints of discrimination.  In her affidavit, Leise stated that she made her selection based on the information in the applicants' electronic applications, her own observations of the applicants' performance and her conversations with the group supervisors in ODAR.  Leise also stated that she did not interview the applicants and was unaware of Plaintiff's race or whether she was over 40 until she took part in the Equal Employment Opportunity ("EEO") counseling process involving Plaintiff.  In her affidavit, Leise further asserted that she selected Ms. Richard because of her variety of experience, and the fact that in the year she had worked at ODAR Ms. Richard was timely in completing work tasks, demonstrated initiative, was a "team player," was willing to assist others and take on additional responsibility and was considered "extremely competent" in her duties.  Leise also stated that the consensus among the Group Supervisors she spoke with

was that Richard was an "excellent employee who displayed initiative and strived to rise to the top."

In her affidavit, Leise stated that while Plaintiff's performance was rated as satisfactory, she was not as timely as Ms. Richard, sometimes required assistance in completing tasks and should have asked for assistance sooner, was not willing to take on additional assignments or duties and, in Leise's view, was resistant to performing work outside her regular duties and did not demonstrate initiative.

Ms. Richard's application for the 2008 SCT Position showed that at the time of her application she had worked for Defendant for approximately sixteen months as a GS-6 Case Technician in the Portland ODAR office.  Her application detailed her prior employment as an office manager in a Portland law firm, as a legal secretary for a Social Security attorney and as a legal secretary and legal assistant to two other attorneys.  Ms. Richard's application also reflected that she had experience as a Certified Nurse's Assistant, was fluent in Korean and had taught English in Korea, had a Bachelor's Degree in History, had worked as a writer and Opinion Editor for the Portland State University newspaper and could type 90 words per minute.  In her twenty-six page long application Ms. Richard provided a detailed and substantial description of the knowledge and skills she developed and demonstrated through her employment history as well as the recognition she had received in May, July and August 2008 for her work performance while in Defendant's employ.

Plaintiff's application for the 2008 SCT Position showed that she had worked for Defendant's Portland ODAR office for four years and two months in the same GS-6 position. Plaintiff did not include any other work experience in her application.  Plaintiff's application showed that Plaintiff had a GED, could type 55 words per minute and had received awards for

her work performance in May and June of 2006. Plaintiff also detailed her work duties and addressed the knowledge and skills she possessed as a result of her training and employment.

Nancy Reynolds was a Group Supervisor in the Portland ODAR and Plaintiff's first line supervisor from May 2007 to October 2008. Reynolds submitted an affidavit and responses to interrogatories during the EEO investigation process. Reynolds stated that she was aware that Plaintiff's race is Hispanic[1] but was not aware of Plaintiff's age. In her affidavit, Reynolds asserted she had received "numerous complaints" about Plaintiff's performance and that she recalled noting in one of Plaintiff's performance appraisals that there were communication issues between Plaintiff and two ALJs that warranted improvement.

In her responses to interrogatories, Reynolds asserted that one of the ALJs complained that Plaintiff had not added new exhibits prior to hearings or sent out CDs containing new exhibits to Medical and Vocational Experts and that, on occasion, the failure to have all the evidence available to all the parties had resulted in hearings being continued. Reynolds also stated that Plaintiff "was usually just barely in compliance" with the 20 days required for notification to Social Security representatives and claimants; had, on one occasion, gone on leave without advising supervisors of any problems with "Noticing"[2] and that it was necessary to reassign another employee to Plaintiff's workload in order to get notices out in a timely manner. Reynolds also stated that it was noted at the time that it took the other employee significantly

---

[1] Technically, the term "Hispanic" denotes an ethnic origin not a race. St. Francis College v. Al-Khazraji, 481 U.S. 604, 610 n. 4 (1987) (noting the "common popular understanding that there are three major human races-Caucasoid, Mongoloid, and Negroid."). However, the term is often used in practice as a racial classification, thus blurring the lines between racial, ethnic and national origin discrimination as it pertains to Hispanics. See Torres v. City of Chicago, 2000 WL 549588 (N.D. Ill. May 1, 2000). The parties' arguments have treated the term Hispanic as a racial classification so the Court will do likewise as the analysis under Title VII is the same regardless of whether the term is a racial classification or a description of ethnicity.

[2] "Noticing" involves the sending out of the Notice of Hearing letters for upcoming hearings before the ALJs.

OPINION AND ORDER – 4

less time to prepare notices than it took Plaintiff to accomplish the same task.  Reynolds stated that Plaintiff was made aware of her "deficiencies" orally, by e-mail and in her performance review for FY 2008.

Plaintiff submitted an affidavit during the course of the EEO investigation in which she describes, among other things, her work duties as a Case Technician.  Plaintiff stated that she performed production work for as many as six ALJ's at a time; had performed Noticing for a ten month period, compared to the usual three month period; was the only Case Technician to have been assigned to an ALJ; and had trained several staff members and new hires, including Ms. Richard, on Case Technician duties.  Plaintiff also asserted that she had been passed over for promotion to the SCT position on previous occasions, and was the only Hispanic in ODAR at that time and the only GS-6 Case Technician in ODAR with nearly five years in that grade.

In her affidavit, Plaintiff also asserted that Leise and Plaintiff's two first-line supervisors, Reynolds and Group Supervisor Brian Henry, were aware of her race because they worked together on a daily basis, and were aware that she was over forty-five years old.  Plaintiff stated that documents in her employee file identify her race as Hispanic and her date of birth as 1963. Plaintiff further asserted that she believed that Leise, Reynolds, and Henry knew she is Hispanic based on her last name.

Plaintiff's affidavit also addressed the performance reviews she received from Reynolds. Plaintiff stated that she received two evaluations to which she submitted rebuttals for what she described as "erroneous content."   The first performance evaluation asserted that "there have been times when [Plaintiff has] needed assistance to maintain the 20 days our minimum requirement on noticing" and that Plaintiff was assisted by other staff until the notices were 45 days out.

OPINION AND ORDER – 5

Plaintiff's written rebuttal to her performance review, dated May 1, 2008, argued that it is not uncommon for co-workers to cover each other's workloads due to scheduled annual leave and sick days and that Plaintiff herself has assisted others, as was also reflected in her performance evaluation. Plaintiff's rebuttal also specifically described an occasion when she was away for both scheduled annual leave and a sick day and had notified "management" by email a week prior to her absence. In her rebuttal, Plaintiff argued that no coverage was provided the week prior to her departure but that staff was assigned to assist her when she returned. The attached emails indicate that Plaintiff emailed Nancy Reynolds to notify her that she would be gone on the upcoming Friday, and "[t]hat this will put me behind on Noticing. I'll need some assistance on Monday when I return."

The second performance evaluation, dated October 31, 2008, signed by Plaintiff and Reynolds, appraised Plaintiff overall at the "Successful Contribution" level. The appraisal reflected that Plaintiff's job duties had changed from Noticing to being the legal assistant for two judges, which it was recognized, was demanding work. The assessment indicates that both ALJs had reported occasions when they had difficulty communicating with Plaintiff regarding concerns about the status of workloads, that Plaintiff was still working towards the timely completion of work assignments and that she had received "considerable assistance" from temporary staff in order to complete work assignments. The assessment also indicated that Plaintiff treated the public with courtesy and respect, possessed the knowledge to perform all the duties of her position and maintained communication with the ALJs' scheduling staff.

Plaintiff also submitted a written rebuttal to this performance evaluation in which she argued that, in assisting two ALJs, she was managing a double workload and had also been assigned the added duty of Cashier and been asked to train new support staff. Plaintiff also

reiterated that the use of support staff is "routine" and should not be reflected negatively in her performance evaluation.

II.   Alleged Denial of Training Opportunities

       In her affidavit, Plaintiff asserted that she had requested training opportunities in several discussions with different Group Supervisors.  Plaintiff specifically described a conversation with Reynolds during which she asked why she was not being allowed to train in "workup." Workup, also referred to as "case pulling," is assembling files for the ALJs and is one of the duties that is performed by SCTs and not Case Technicians.  Plaintiff asserted that Reynolds' response was that because Plaintiff did not perform overtime she was not to receive any additional training.  Plaintiff also asserted that, on one occasion, Reynolds told her that she had been directed by Leise to keep Plaintiff in Noticing indefinitely.  In her affidavit, Plaintiff stated that she has never refused any training opportunities because she would have to work overtime.

       In her deposition, Plaintiff testified that much of the training offered is mandatory, that "everybody" attends and that she had "taken them all."  Plaintiff testified that one type of training not given in this manner was workup training.  Plaintiff testified that she had asked for this specific training but received a variety of reasons from supervisors that she took as "just a brush-off."  However, Plaintiff testified that she was told she could do the training on overtime. According to Plaintiff, Defendant offered "comp time" and "credit time" but she was asking for "on-the-job training" during work hours.  Plaintiff further testified that she never received workup training while she was a Case Technician and was learning workup on the job now that she was a SCT.

       In her affidavit, Leise asserted that, although as a second level supervisor she was not normally involved in training requests, she was aware that ODAR had conducted several training

sessions for all staff members and that from time to time staff, including Plaintiff, were given

opportunities to train with lead case technicians.  Leise also stated that Defendant has a website

known as GO-LEARN that offers on-line courses.  In her affidavit, Leise stated that she did not

recall having a conversation with Reynolds in which she indicated that Plaintiff should not be

trained and should be kept where she was working.

In her affidavit, Reynolds stated that she discussed training opportunities with Plaintiff at

her performance reviews, told Plaintiff that there would be opportunities for working with SCTs

and more formal training and that training was available on the GO-LEARN website.  Reynolds

also stated that Plaintiff was offered the opportunity to train with a lead legal assistant and that

although two or three other Case Technicians took advantage of this opportunity, Plaintiff did

not choose to do so.  Reynolds asserted that those who were learning to workup cases were

assigned to do so on overtime and that Plaintiff stated to her that she was not interested in

working overtime.  Reynolds also asserted that Plaintiff was offered "fee petition" training but

that Plaintiff told her she did not think she needed the training and did not attend the session.

Reynolds stated that she recalled Plaintiff asking to be reassigned to something other than

Noticing but that she was unable to reassign Plaintiff  immediately because the office was short

staffed.  Reynolds stated she recalled having a discussion with Leise about reassigning Plaintiff

but that they both agreed that a reassignment could not be made until there were changes in

workload or work flow or additional staff were brought on.  Reynolds asserted that Leise never

told her that she should keep Plaintiff in Noticing to deny her training opportunities or different

assignments.

Group Supervisor Henry submitted an affidavit in which he asserted that Plaintiff had not

made a request to him for training since he had become her immediate supervisor but that he had

offered Plaintiff the opportunity to receive training and learn additional tasks. Henry stated that

he offered Plaintiff the opportunity for query training and that while running queries is a task

generally performed by SCTs other Case Technicians had gone through query training and it was

a function that a Case Technician should become proficient in as part of career development.

Henry asserted that Plaintiff was resistant to attending the training but eventually did attend.

Plaintiff submitted a Rebuttal Affidavit as part of the EEO investigation. In this affidavit,

Plaintiff asserted that she was directed to do query training, that the running of queries is done by

the SCTs as one of their duties and that she was the only Case Technician who was required to

run additional queries for the ALJ to whom she was assigned. Plaintiff asserted that she did not

decline the training but questioned Henry regarding the duty, telling him that it was an

unnecessary step and that it was the responsibility of the SCTs. Plaintiff also rebutted Reynolds'

affidavit by asserting that she did not train with the lead legal assistant due to time constraints

and did not take the fee petition training because it was given specifically to the SCTs and was

not a function ever performed by Case Technicians.

In an email dated April 9, 2009, Patrick Knight, Plaintiff's EEO representative and a

Paralegal Writer employed by Defendant, stated that the three Paralegal Writers in the office,

including himself, received workup/case-pulling training during work hours. In a letter dated

August 3, 2009, Knight wrote that he provided workup/case pulling training to a Case

Technician during work hours.

## Claims

Plaintiff's Amended Complaint sets forth three claims alleging that Defendant unlawfully

discriminated against her on the basis of her age and protected minority status in violation of the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. §626(b) and Title VII of the Civil

Rights Act of 1964 (Title VII), 42 U.S.C. §2000e-2(a).  The first claim is based on Plaintiff's

non-selection for promotion to a Senior Case Technician Position in 2008.  The second claim is

based on Plaintiff's non-selection for promotion in 2009.  The third claim alleges that Defendant

denied Plaintiff training opportunities which, in turn, impeded, her opportunities for promotion.

In her Response to the Motion for Summary Judgment, Plaintiff concedes her claim

regarding the 2009 non-selection for promotion.  Therefore, only Plaintiff's first and third claims

are now before the Court.


### STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 (c) authorizes summary judgment if no genuine issue

exists regarding any material fact and the moving party is entitled to judgment as a matter of law.

The moving party must show the absence of an issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).  The moving party may discharge this burden by showing that there is

an absence of evidence to support the nonmoving party's case.  Id.  When the moving party

shows the absence of an issue of material fact, the nonmoving party must go beyond the

pleadings and show that there is a genuine issue for trial.  Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material.

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

Reasonable doubts concerning the existence of a factual issue should be resolved against the

moving party.  Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all

justifiable inferences are to be drawn in the nonmoving party's favor.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986).  No genuine issue for trial exists, however, where the

record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

OPINION AND ORDER – 10

## Discussion

As noted above, Plaintiff alleges that Defendant discriminated against her on the basis of her race and age when it: 1) did not select her for a SCT Position in 2008 and 2) denied her training opportunities that impeded her chances for promotion

I. Method of Analyzing Claims

The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 et *seq.,* makes it unlawful for an employer to hire or discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's age. Protection under the ADEA extends to all individuals who are at least 40 years old. 29 U.S.C. §631(a).

Title VII prohibits employers from making adverse employment decisions based upon an individual's race. See 42 U.S.C. §2000e-2(a). The court applies the same analytical framework to both Title VII and ADEA claims. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994).

For claims alleging violation of the ADEA or Title VII, federal courts apply a "burden shifting" method first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. Id. at 802. That burden may be met by offering either direct evidence of discriminatory intent or through the framework set out in McDonnell Douglas. Wallis, 26 F. 3d at 889. Under the McDonnell Douglas framework, a plaintiff establishes a *prima facie* case of unlawful discrimination by showing that she belonged to a protected class, was qualified for the position in question, was subjected to an adverse employment action, and others who were not in the protected class were treated more favorably. E.g., Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir.2002) (citations omitted)(racial discrimination); Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)(age discrimination). Establishing a *prima facie* case creates a presumption of unlawful discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Under the McDonnell Douglas framework, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the defendant meets this burden of production, the presumption of unlawful discrimination "simply drops out of the picture" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), and the plaintiff then bears the burden of demonstrating that the employer's proffered reason is pretextual. Burdine, 450 U.S. at 256. This may be accomplished either by persuading the trier of fact that a discriminatory reason more "likely motivated the employer or ... by showing that the employer's proffered explanation is unworthy of credence." Id.

A plaintiff may show that the employer's proffered reason is not credible because it is internally inconsistent or is otherwise not believable. Chuang v. University of California, Davis Board of Trustees, 225 F.3d 1115, 1127 (9th Cir.2000). However, a plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." Wallis, 26 F.3d at 890 (citation omitted). If the plaintiff presents evidence that is sufficient to persuade the trier of fact that the defendant's proffered reason is false, intentional discrimination may be inferred based upon disbelief of the employer's reason and the existence of a *prima facie* case of discrimination. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 n. 2 (9th Cir. 1996)(cert. denied 522 U.S. 950 (1997)).

II.  Analysis

The parties agree that the McDonnell Douglas burden shifting framework is applicable to Plaintiff's claims here. The question, therefore, is whether under this framework there exist

genuine issues of material fact in each of Plaintiff's remaining two claims. I will address each claim in turn.

A. 2008 Non-Selection for Promotion

Defendant does not dispute that the evidence offered by Plaintiff establishes a McDonnell Douglas *prima facie* case of discrimination as to Plaintiff's first claim. Defendant concedes that Plaintiff is a Hispanic individual over 40 years of age, she was on the "best qualified" list for the SCT Position, she was not selected for the position and that the individual who was selected was under 40 years of age and Caucasian. Defendant, however, argues that it has satisfied its burden of coming forward to rebut the inference of discrimination raised by Plaintiff's *prima facie* case and Plaintiff has failed to meet her burden of establishing that Defendant's reasons for not selecting her for the 2008 promotion were pretextual.

Defendant argues that the legitimate, nondiscriminatory reason for its decision to not select Plaintiff for promotion in 2008 was that the applicant selected for the position, Rose Richard, was more qualified than Plaintiff and was "clearly the best qualified over all."

Defendant argues that Leise, the selecting official, determined that there was a significant difference between the qualifications and demonstrated performance of Plaintiff and the selected applicant with Richard possessing a great variety of experience and being very timely in completing assigned tasks.

I conclude that Defendant has met its burden to rebut the inference of illegal discrimination by articulating a legitimate, nondiscriminatory reason for its decision. Defendant has produced sufficient evidence that the selected candidate had a greater variety of experience, higher academic qualifications and was viewed by her supervisors as performing her work in a timely manner. Employers have the "discretion to choose among equally qualified candidates,

provided the decision is not based upon unlawful criteria." <u>Burdine</u>, 450 U.S. at 259. By offering the explanation that Plaintiff, while qualified, was not the best-qualified of the candidates for the 2008 SCT position, Defendant has articulated a legitimate non-discriminatory reason for its actions. Having concluded that the Defendant has successfully rebutted Plaintiff's *prima face* case, I now turn to the question of whether Plaintiff has shown that Defendant's proffered reason was pretextual.

As noted above, pretext may be established either directly by showing that unlawful discrimination more likely motivated the employer or indirectly by showing that the employer's proffered reason is "unworthy of credence" because it is internally inconsistent or otherwise not believable. <u>Chuang</u> 225 F.3d at 1127. However, a plaintiff must do more than "establish a *prima facie* case and deny the credibility of [the defendant's] witnesses." <u>Wallis</u>, 26 F.3d at 890 (citation omitted).

Plaintiff supports her argument that there exists a genuine issue of fact with respect to Defendant's proffered nondiscriminatory reason by challenging the credibility of those reasons. Plaintiff argues that the evidence fails to establish how selected candidate Richard's qualifications were superior to Plaintiff's. Plaintiff also argues that there is substantial evidence that Plaintiff was and is a good employee and that this record of good performance undermines the credibility of Defendant's proffered nondiscriminatory reasons. Plaintiff points to positive comments in her performance evaluations, and letters of recommendation submitted on her behalf.[3] This evidence, Plaintiff argues, creates at least a question of fact regarding the

---

[3] The record does not reflect that letters of recommendation were included in the materials upon with Leise relied to make the decision as to the 2008 SCT promotion and, in any event, one letter post-dates the 2008 non-selection of Plaintiff and the other letter is undated.

credibility of Defendant's assertion that it promoted Richard because she was more qualified than Plaintiff.

I disagree. As Defendant notes in its Reply, it is not arguing that Plaintiff was a "bad employee" or unqualified for the SCT position, only that Plaintiff was not the best qualified. The evidence supports Defendant's explanation. The selecting official, Leise, stated that she relied upon the candidates' electronic applications, her own personal observations and discussions with the Group Supervisors in making her promotion decision. It is clear that there was a significant difference in the applications submitted by Plaintiff and selected applicant Richard. Richard's application comprised 26 pages that indicated she had a bachelor's degree, could type at 90 words per minute, had received recognition for superior performance in her position as a Case Technician, and that detailed a depth and breadth of relevant experience gained prior to her employment with Defendant. While Plaintiff had worked for Defendant for a longer period of time, her application reflected that this was the extent of her work experience and also indicated that Plaintiff's academic credentials and typing skills were not equal to Richard's.

In addition, there is evidence in the record that Plaintiff's first line supervisor, Reynolds, was "not always confident" in Plaintiff's ability to complete projects in a timely manner, that it took other employees less time than Plaintiff to accomplish the same tasks and that she found it necessary to reassign Plaintiff's work to others to have it completed timely. The record also contains evidence that Reynolds received complaints about Plaintiff's work performance from two of the ALJ's for whom Plaintiff worked. In contrast, it was Leise's understanding that there was a consensus among the Group Supervisors that Richard was "an excellent employee."

Plaintiff argues that both the ALJs' alleged complaints to Reynolds and the statement by Leise regarding the consensus among the Group Supervisors about Richard are inadmissible

hearsay. Defendant, citing to Jones v. Los Angeles Comm. Coll. Dist., 702 F.2d 203, 205 (9th Cir. 1983),  responds that the statements are admissible for the non-hearsay purpose of showing the state-of-mind of the selecting official and to show her non-discriminatory basis for believing Plaintiff was not the most qualified applicant.  I agree, and in any event, even if I were to disregard these statements, the record contains enough other evidence to support Defendant's assertion that Leise believed that Plaintiff was not the best qualified candidate.

        In her affidavit, Plaintiff asserted, and Defendant does not dispute, that she was the only Hispanic in ODAR at that time and the only GS-6 Case Technician in ODAR with nearly five years in that grade.  Plaintiff also asserted that Leise and Plaintiff's two first-line supervisors, Reynolds and Group Supervisor Brian Henry, were aware of her race because they worked together on a daily basis, and were aware that she was over forty-five years old.   However, Leise and Henry both submitted affidavits asserting that, until the EEO process, they were unaware of Plaintiff's race or whether she was over 40 and Reynolds submitted an affidavit asserting that she was unaware of Plaintiff's age.   Under these circumstances, Plaintiff's statement, which simply asserts her belief about what her supervisors knew, is insufficient to create a question of fact as to whether Defendant's explanation for its promotion decision is credible.

        While Plaintiff's burden at the summary judgment stage is not high, Pottenger v. Potlatch Corp.  329 F.3d 740, 746 (9th Cir. 2003), it, at all times, remains her burden to persuade the trier of fact that the defendant intentionally discriminated against her. Burdine, 450 U.S. at 253.  At the summary judgment stage, where the defendant has rebutted the inference of illegal discrimination by articulating a legitimate, nondiscriminatory reason for its decision, the plaintiff must present sufficient evidence to satisfy the court that a reasonable trier of fact could conclude either that the defendant's proffered reason for its decision was false or that the true reason for

the decision was a discriminatory one.  See Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  As noted above, a plaintiff must do more than "establish a *prima facie* case and deny the credibility of [the defendant's] witnesses." Wallis, 26 F.3d at 890 (citation omitted).  In choosing to attempt to establish pretext by challenging the credibility of Defendant's proffered reason for its promotion decision, Plaintiff was required to come forward with "specific and substantial evidence."  Godwin v. Hunt Wesson, Inc., 150 F. 3d 1217, 1222 (9th Cir. 1998).  Plaintiff has not met this burden.

Although Plaintiff has presented a *prima facie* case of discrimination, she has not presented evidence sufficient to raise genuine issues of fact as to whether Defendant's legitimate nondiscriminatory explanation was pretextual.  Accordingly, Defendant's motion for summary judgment as to this claim is granted.

B.  Denial of Training

Plaintiff's remaining claim alleges that Defendant denied her training opportunities, specifically "workup" training, in order to prevent her from being promoted.  Defendant argues that Plaintiff has failed to present a *prima facie* case of race or age discrimination as to this claim.  I agree.

In order to establish a *prima facie* case for this claim Plaintiff must show that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably.  Godwin, 150 F. 3d at 1220 (citing McDonnell Douglas, 411 U.S. at 802).

There is no dispute that Plaintiff belongs to a protected class.  As discussed above, there is at least a question as to whether she was performing according to her employer's legitimate

expectations. However, there is insufficient evidence in the record to support an inference that Plaintiff suffered an adverse employment action or disparate treatment. Plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that Defendant's decisions regarding when and how to offer training were based on impermissible discriminatory motives. Even if the record supported such a conclusion, Plaintiff has presented no evidence creating an inference that her lack of opportunity to train resulted in any adverse action with respect to the compensation, terms, conditions, or privileges of her employment. See 42 U.S.C. § 2000e–2(a)(1). In her deposition, Plaintiff conceded that she was offered the opportunity to take workup training, albeit during overtime hours. Plaintiff also testified that she had been promoted to an SCT Position without having received workup training and nothing in the record supports the conclusion that "but for" this training, Plaintiff would have been promoted sooner. Accordingly, Defendant's motion for summary judgment as to Plaintiff's denial of training claim is granted.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment (#53) is GRANTED.

DATED this 23rd day of April, 2013.

        /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

OPINION AND ORDER – 18